Bradley L. Levine, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-1513

Allan Urgent
Office of the United States Attorney
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ  07102
(973) 297-2079

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALSOL CORPORATION, | ) | |
| SB BUILDING ASSOCIATES, LIMITED | ) | Civ. A. No. _____ |
| PARTNERSHIP, | ) | |
| SB BUILDING GP, L.L.C. | ) | |
| UNITED STATES LAND RESOURCES, L.P., | ) | |
| UNITED STATES REALTY RESOURCES, | ) | |
| INC., | ) | |
| LAWRENCE S. BERGER, and | ) | |
| 3.60 ACRES OF LAND, More or Less, located | ) | |
| at Block 58, Lot 1.01, at 2 through 130 Ford Avenue) | | |
| in Milltown, Middlesex County, New Jersey, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Verified Complaint and alleges as follows:

<u>NATURE OF THE ACTION</u>

1.      This is a civil action brought under Sections 107(a) and 107(*l*) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9607(*l*), regarding the Michelin Powerhouse Superfund Site ("Powerhouse Site") and the Michelin Building 3 Vat Site ("Building 3 Site") (collectively "Sites"), located within Block 58, Lot 1.01, at 2 through 130 Ford Avenue in Milltown, Middlesex County, New Jersey.  The United States seeks:

(a) recovery against Defendant Alsol Corporation ("Alsol"), SB Building Associates Limited Partnership ("SB-LP"), SB Building GP, L.L.C. ("SB-GP"), United States Land Resources, L.P. ("Land Resources"), United States Realty Resources, Inc. ("Realty Resources"), and Lawrence S. Berger (collectively, "Defendants"), for response costs incurred by the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in connection with the release or threatened release of hazardous substances at or from the Sites; and

(b) recovery <u>in rem</u> of all costs constituting the lien of the United States pursuant to Section 107(*l*) of CERCLA, 42 U.S.C. § 9607(l), against Defendant 3.60 Acres of Land, More or Less, located within Block 58, Lot 1.01, at 2 through 130 Ford Avenue in Milltown, Middlesex County, New Jersey ("3.60 Acres of Land").

<u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction over the subject matter of this action and over

Defendants under 28 U.S.C. §§ 1331 and 1345, and Sections 107(a), and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a), and 9613(b).

      3.      This Court has jurisdiction <u>in rem</u> over 3.60 Acres of Land pursuant to Section 107(*l*)(4) of CERCLA, 42 U.S.C. § 9607(*l*)(4), 28 U.S.C. § 1655, and Federal Rule of Civil Procedure 4(n).

      4.      Venue properly lies in the District of New Jersey for claims against Defendants pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because these claims arise in connection with releases and/or the threat of releases of hazardous substances in this district; Defendants reside in this district; and the Sites are located in this district.

      5.      Venue is proper in this judicial district for the <u>in rem</u> claim against 3.60 Acres of Land pursuant to Section 107(*l*)(4) of CERCLA, 42 U.S.C. § 9607(*l*)(4), and 28 U.S.C. § 1391(b), because 3.60 Acres of Land is located, and the removal action at the Site occurred, in this district.

DEFENDANTS

**Defendant Alsol**

      6.      Defendant Alsol is or was a corporation originally organized and incorporated under the laws of the State of New Jersey, with its principal place of business and mailing address at 237 South Street, P.O. Box 2049, Morristown, New Jersey.

      7.      Alsol is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

      8.      Alsol purchased the Sites on December 20, 1945.

9.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, the corporate charter of Alsol was revoked by the State of New Jersey on July 8, 1995, for failure to file annual reports, and the charter has not been reinstated.

10.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol has no net worth.

11.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol is unaware of how the corporation was capitalized when it was formed in 1945, and has no knowledge of any additional capitalization.

12.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Lawrence S. Berger is the only officer of Alsol.

13.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, there are no directors of Alsol.

14.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol does not conduct regular board meetings.

15.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol does not have employees collecting salaries and has no similar expenses.

16.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol does not prepare financial statements.

17.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol does not possess articles of incorporation.

18.      Upon knowledge, information, and belief, formed after reasonable inquiry under

the circumstances, Alsol does not possess minutes from board meetings.

19.     As such, the shareholders of Alsol are liable for the obligations of Alsol as claimed herein.

20.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Alsol is currently seeking reinstatement from the New Jersey Department of the Treasury.

**Defendant SB-LP**

21.     SB-LP is a New Jersey limited partnership with its principal place of business and mailing address at 237 South Street, P.O. Box 2049, Morristown, New Jersey.

22.     SB-LP is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

23.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-LP has no employees.

24.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-LP, along with Land Resources, as alleged infra, acquired the stock of Alsol in 1986.

25.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-LP at relevant times was a shareholder of Alsol.

26.     As such, SB-LP is liable for the obligations of Alsol as claimed herein.

27.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-LP along with Land Resources and/or Lawrence S. Berger, as hereinafter alleged, are collectively the alter ego of Alsol as a result of, inter alia: Alsol's gross

undercapitalization; charter revocation; failure to observe corporate formalities, including the failure to file annual reports, absence of corporate records, and non-functioning of officers and/or directors; and their actions on behalf of Alsol.

28.    As such, SB-LP, along with Land Resources and/or Lawrence S. Berger, is liable for the obligations of Alsol as claimed herein.

**Defendant SB-GP**

29.    SB-GP is or was originally a New Jersey limited liability company with its principal place of business and mailing address at 237 South Street, P.O. Box 2049, Morristown, New Jersey.

30.    SB-GP is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

31.    Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-GP's status as a limited liability company was canceled by the State of New Jersey in May 2001.

32.    Nonetheless, upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, SB-GP continued to do business after May 2001.

33.    As such, SB-GP did not operate with the protections of limited liability after May 2001.

34.    SB-GP, since at least May 2001, was as a general partner of SB-LP, and is therefore liable for the obligations of SB-LP and, therefore, Alsol.

**Defendant Land Resources**

35.    Defendant Land Resources is a New Jersey limited partnership with its principal

place of business and mailing address at 237 South Street, P.O. Box 2049, Morristown, New Jersey.

36.     Land Resources is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

37.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Land Resources and SB-LP acquired the stock of Alsol in 1986.

38.     Since 1986, Land Resources has been a shareholder of Alsol.

39.     As such, Land Resources is liable for the obligations of Alsol as claimed herein.

40.     At relevant times, Land Resources, separately or in conjunction with SB-LP and/or Lawrence S. Berger, acted on behalf of Alsol by, inter alia, regularly corresponding with EPA on Alsol's behalf on Land Resources letterhead, and attended meetings with EPA on Alsol's behalf.

41.     Land Resources is the manager of SB-GP.

42.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Land Resources acts on behalf of SB-GP.

43.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Land Resources is a general partner of Alsol.

44.     As such, Land Resources is liable for the obligations and liabilities of Alsol, including during the time that Alsol's corporate charter was revoked.

45.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Land Resources, separately or in conjunction with SB-LP and/or Lawrence S. Berger, as heretofore and hereinafter alleged, are collectively the alter ego of Alsol as a result of,

inter alia: Alsol's gross undercapitalization; charter revocation; failure to observe corporate formalities, including its failure to file annual reports, absence of corporate records, and non-functioning of officers and/or directors.

46.     As such, Land Resources, along with SB-LP and/or Lawrence S. Berger, is liable for the obligations of Alsol as claimed herein.

**Defendant Realty Resources**

47.     Realty Resources is a New Jersey corporation with its principal place of business and mailing address at 237 South Street, P.O. Box 2049, Morristown, New Jersey.

48.     Realty Resources is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

49.      Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Realty Resources corporate charter has been revoked by the State of Jersey.

50.     Realty Resources is a general partner of Land Resources, and is therefore liable for the obligations and liabilities of Land Resources and, therefore, the obligations and liabilities of Alsol.

**Defendant Lawrence S. Berger**

51.     Lawrence S. Berger is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

52.     Lawrence S. Berger is the president of Alsol.

53.     Lawrence S. Berger is or was the decision-maker for Alsol.

54.     At relevant times, Lawrence S. Berger undertook actions on behalf of Alsol, including but not limited to, representing to others that he is Alsol's president, making Alsol's

8

decisions, signing correspondence as Alsol's president, and entering into contracts on Alsol's behalf.

55.     Lawrence S. Berger is liable for the obligations and liabilities of Alsol, including but not limited to the time during which Alsol's corporate charter was revoked, as a result of his activities on behalf of Alsol.

56.     Lawrence S. Berger is the President of SB-LP.

57.     Lawrence S. Berger is the President of SB-GP.

58.     Lawrence S. Berger is a limited partner in Land Resources.

59.     Lawrence S. Berger is the President of Land Resources.

60.     Lawrence S. Berger is the President of Realty Resources.

61.     Lawrence S. Berger is a director of Realty Resources.

62.     Lawrence S. Berger attends meetings with EPA as a representative of Land Resources, which attends meetings on behalf of Alsol.

63.     Lawrence S. Berger signs correspondence on behalf of Land Resources, which is acting on behalf of Alsol.

64.     Lawrence S. Berger acts on behalf of Realty Resources, who acts on behalf of Land Resources, who acts on behalf of SB-GP.

65.     The principal places of business for Defendants Alsol, SB-LP, SB-GP, Land Resources, Realty Resources, and Lawrence S. Berger are the same.

66.     Upon knowledge, information, and belief, formed after reasonable inquiry under the circumstances, Lawrence S. Berger, separately or in conjunction with SB-LP and/or Land Resources, as heretofore alleged, are the alter ego of Alsol as a result of, inter alia: Alsol's

9

undercapitalization, charter revocation, failure to observe corporate formalities, including failure to file annual reports, absence of corporate records, and non-functioning of other officers and/or directors; and his actions on behalf of Alsol.

67.     As such, Lawrence S. Berger, along with SB-LP and/or Land Resources, is liable for the obligations and liabilities of Alsol as claimed herein.

**Defendant 3.60 Acres of Land**

68.     Defendant 3.60 Acres of Land is described more particularly in the tax rolls of the Borough of Milltown/Middlesex County, and is described further in a deed from Michelin Realty Corporation to Alsol Corporation as recorded in the office of the Clerk of Middlesex County in deed book 1294, beginning at page 506, as follows:

> All those certain tracts or parcels of land and premises hereinafter particularly described, situate, lying and being in the Borough of Milltown and Township of East Brunswick in the County of Middlesex and State of New Jersey, bounded and described below.
>
> FIRST TRACT: Beginning at a point formed by the intersection of the Southeasterly line of Ford Avenue with the Southwesterly line of Main Street as set forth in the survey hereinafter mentioned and running thence (1) along the said Southeasterly line of Ford Avenue South 54 degrees 59 minutes west 132.39 feet; thence (2) still along the same South 57 degrees 15 minutes west 181.02 feet to the line of land now or formerly of Mary Kohlhepp; thence (3) along her line south 32 degrees 45 minutes East 125 feet; thence (4) still along said line of Mary Kohlhepp south 57 degrees 15 minutes West 120 feet; thence (5) still along her line north 32 degrees 45 minutes West 125 feet to the aforesaid southeasterly line of Ford Avenue; thence (6) along the same South 57 degrees 15 minutes west 279.56 feet the northeasterly line of Clay Street; thence (7) along the same South 32 degrees 45 minutes East 84 feet to a point; thence (8) south 57 degrees 15 minutes West 250 feet to a point; thence (9) south 32 degrees 45 minutes East 41 feet to a point; thence (10) south 57 degrees 15 minutes West 300 feet to a point; thence (11) north 32 degrees 45 minutes West and crossing beyond the northwesterly line of Ford Avenue 430 feet to a point; thence (12) south 57 degrees 15 minutes West 373 feet to a point; thence (13) north 32 degrees 45 minutes West 134 feet to a point in the southeasterly line of Church Street; thence

10

(14) along the same south 57 degrees 15 minutes West 318.44 feet to an iron pin; thence (15) north 32 degrees 45 minutes West 301.40 feet to the southeasterly line of Lafayette Street; thence (16) running along the same south 19 degrees 8 minutes West 6.72 feet to a point; thence (17) north 72 degrees 52 minutes West 209.43 feet to the southeasterly line of Riva Avenue; thence (18) running along the same south 19 degrees 57 minutes West 269.55 feet to Lawrence Brook; thence (19) in a general easterly direction along said Lawrence Brook the various courses thereof to the Mill Pond; thence (20) along the said Mill Pond in a general northerly direction the various courses thereof to the southeasterly line of Main Street; thence (21) along the same north 57 degree 12 minutes West 61.60 feet; thence (22) still along the same North 66 degrees 6 minutes West 177.76 feet to the southeasterly line of Ford Avenue and a point and place of BEGINNING.

The above description is in accordance with the survey made by H.H. Selover.

Civil Engineer, dated November 1945.

## STATUTORY BACKGROUND

**The Comprehensive Environmental Response, Compensation, and Liability Act**

69.     CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions."  42 U.S.C. §§ 9604(a), 9601(25).

70.     Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .

71.     For CERCLA response actions and enforcement purposes, the Administrator of

EPA is the President's delegate, as provided in operative Executive Orders, and, within certain

limits, the Regional Administrators of EPA have been re-delegated this authority.

72.     Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

(1)     [T]he owner . . . of a . . . facility. . .

shall be liable for –

(A) all costs of removal or remedial action incurred by the United
States Government or a State . . . not inconsistent with the
national contingency plan . . . .

The amounts recoverable in an action under this section shall include
interest on the amounts recoverable under subparagraphs (A) . . . .

73.     Section 107(*l*) of CERCLA, 42 U.S.C. § 9607(*l*), provides in pertinent part:

(1)     In general

All costs and damages for which a person is liable to the United States
under subsection (a) of this section . . . shall constitute a lien in favor of
the United States upon all real property and rights to such property which–

(A)     belong to such person; and

(B)     are subject to or affected by a removal or remedial action.

(2)     Duration

The lien imposed by this subsection shall arise at the later of the following:

(A)     The time costs are first incurred by the United States with
respect to a response action under this chapter.

(B)     The time that the person referred to in paragraph (1) is
provided (by certified or registered mail) written notice of
potential liability.

Such lien shall continue until the liability for the costs (or a judgment

against the person arising out of such liability) is satisfied or becomes unenforceable through operation of the statute of limitations provided in section 9613 of this title….

(4)     Action in rem

The costs constituting the lien may be recovered in an action in rem in the United States district court for the district in which the removal or remedial action is occurring or has occurred.

GENERAL ALLEGATIONS

74.     To address the release or threatened release of hazardous substances at the Powerhouse Site, EPA conducted response activities, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604.

75.     To address the release or threatened release of hazardous substances at the Building 3 Site, EPA has conducted response activities, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604

76.     The Powerhouse Site and the Building 3 Site are located on the southern side of Ford Avenue, within Block 58, Lot 1.01, in Milltown, Middlesex County, New Jersey, as more specifically described in Paragraph 68.

77.     The Powerhouse Site includes Buildings 9 and 10, which are actually one building divided into two portions (the "Powerhouse Building"), and all appurtenances connected thereto.

78.     The Building 3 Site consists of a single building which was utilized for the manufacture of mechanical rubber goods and also housed a machine shop.

79.     The Sites are part of the former Michelin Tire industrial facility.

**Powerhouse Site**

13

80.    A Removal Site Evaluation ("Powerhouse RSE") for the Powerhouse Site was completed on May 12, 2004.

81.    Hazardous substances such as friable asbestos, arsenic, lead, and mercury were discovered at the Powerhouse Site.

82.    As a result of the Powerhouse RSE, EPA determined that a release or threat of release of hazardous substances had occurred at the Powerhouse Site, and that a CERCLA removal action should be undertaken to mitigate the threats associated with the release or threat of release of hazardous substances at the Powerhouse Site.

83.    Many of the contaminants found at the Powerhouse Site, including but not limited to, friable asbestos, arsenic, lead, and mercury are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

84.    On November 5, 2004, EPA sent a letter notifying Alsol of its potential liability for the removal action at the Powerhouse Site, and offering Alsol the opportunity to perform the necessary removal action or fund EPA's performance of the removal action at the Powerhouse Site.

85.    Alsol only partially completed the removal action at the Powerhouse Site.

86.    On May 7, 2007, EPA sent a letter to Alsol notifying it of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

87.    The Powerhouse Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

88.    At times relevant to this action, there were "releases" or threats of releases of

14

hazardous substances into the environment at or from the Powerhouse Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

89.     The substances found at the Powerhouse Site were and are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

90.     EPA's actions with respect to the Powerhouse Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

91.     In undertaking response actions to address the release or threat of release of hazardous substances at the Powerhouse Site, EPA has incurred response costs of at least $3,036,930.43, plus interest, and continues to incur such costs.

92.     The response costs incurred by EPA in connection with the Powerhouse Site were incurred in a manner not inconsistent with the National Contingency Plan, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

93.     On December 17, 2012, EPA sent a letter to Alsol, notifying it of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

94.     On December 17, 2012, EPA sent a letter to SB-LP, notifying it of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

95.     On December 17, 2012, EPA sent a letter to SB-GP, notifying it of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

96.     On December 17, 2012, EPA sent a letter to Land Resources, notifying it of

potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

97.     On December 17, 2012, EPA sent a letter to Realty Resources, notifying it of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

98.     On December 17, 2012, EPA sent a letter to Lawrence S. Berger, notifying him of potential liability at the Powerhouse Site and demanding payment for response costs incurred at the Powerhouse Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

99.     The United States has not been reimbursed by any of the Defendants for any of the response costs the United States incurred at the Powerhouse Site.

**Building 3 Site**

100.    EPA completed a Removal Site Evaluation for the Building 3 Site ("Building 3 RSE") on November 12, 2010.

101.    Friable asbestos was discovered at the Building 3 Site.

102.    As a result of the Building 3 RSE, EPA determined that a release or threat of release of hazardous substances had occurred at the Building 3 Site, and that a CERCLA Removal Action should be undertaken to mitigate the threats associated with the release or threat of release of hazardous substances at the Building 3 Site.

103.    Hazardous substances found at the Building 3 Site, including but not limited to, friable asbestos, are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

104.    The presence of hazardous substances at the Building 3 Site and their past,

16

present, or potential migration located at or emanating from the Site, constituted actual and/or threatened "releases" as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

105.    The Building 3 Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

106.    At times relevant to this action, there were "releases" or threats of releases of hazardous substances into the environment at or from the Building 3 Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

107.    The substances found at the Building 3 Site were and are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

108.    EPA's actions with respect to the Building 3 Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

109.    At relevant times, EPA has conducted response actions related to the Building 3 Site.

110.    In undertaking response actions to address the release or threat of release of hazardous substances at the Building 3 Site, EPA has incurred response costs of at least $70,970, plus interest, and continues to incur such costs.

111.    The response costs incurred by EPA in connection with the Building 3 Site were incurred in a manner not inconsistent with the National Contingency Plan, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

112.    On December 17, 2012, EPA sent a letter to Alsol, notifying it of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Powerhouse Site plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

113.    On December 17, 2012, EPA sent a letter to SB-LP, notifying it of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Building 3 Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

114.    On December 17, 2012, EPA sent a letter to SB-GP, notifying it of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Building 3 Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

115.    On December 17, 2012, EPA sent a letter to Land Resources, notifying it of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Building 3 Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

116.    On December 17, 2012, EPA sent a letter to Realty Resources, notifying it of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Building 3 Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

117.    On December 17, 2012, EPA sent a letter to Lawrence S. Berger, notifying him of potential liability at the Building 3 Site and demanding payment for response costs incurred at the Building 3 Site, plus interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

118.    The United States has not been reimbursed by any of the Defendants for any of the response costs the United States incurred at the Building 3 Site.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: REIMBURSEMENT OF RESPONSE COSTS

119.    Paragraphs 1 through 118, above, are realleged and incorporated herein by reference.

120.    Pursuant to Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as the current

18

owner of the facility, Defendant Alsol is jointly and severally liable to the United States for all costs incurred in connection with the Sites, including enforcement costs, which as of October 31, 2012, are at least $3,107,900.

121.    Defendants SB-LP, SB-GP, Land Resources, Realty Resources, and/or Lawrence S. Berger, as aforesaid, are jointly and severally liable to the United States for all costs incurred in connection with the Sites, including enforcement costs.

SECOND CLAIM FOR RELIEF:  IN REM

122.    Paragraphs 1 through 118, above, are realleged and incorporated herein by reference.

123.    Pursuant to Section 107(*l*) of CERCLA, 42 U.S.C. § 9607(*l*), the costs incurred by the United States in this matter constitute a CERCLA lien upon the real property which is subject to or affected by the response actions taken by EPA with respect to the Sites, including 3.60 Acres of Land.

124.    Pursuant to Section 107(*l*)(2) of CERCLA, 42 U.S.C. § 9607(*l*)(2), the lien will continue until liability for the United States' unreimbursed response costs incurred in connection with the Sites are satisfied.

125.    Pursuant to Section 107(*l*)(4) of CERCLA, 42 U.S.C. § 9607(*l*)(4), the costs constituting the lien may be recovered in an action in rem before this Court.

RELIEF REQUESTED

WHEREFORE, Plaintiff, the United States of America respectfully requests that this Court grant the following relief:

1.    Order Defendants Alsol, SB-LP, SB-GP, Land Resources, Realty

19

Resources, and/or Lawrence S. Berger, jointly and severally, to reimburse the United States for

all costs of response actions taken at the Sites, including all enforcement actions, plus interest,

pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

        2.     Order that Defendant 3.60 Acres of Land be sold and that the proceeds

from such sale be paid to the United States in reimbursement of response costs;

        3.     Award Plaintiff all enforcement costs and disbursements in this action;

and

        4.     Grant such other relief as the Court deems appropriate.

Respectfully submitted,

ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

Dated:  January 18, 2013     By:  s/ Bradley L. Levine
Bradley L. Levine
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-1513

PAUL J. FISHMAN
United States Attorney
District of New Jersey

Allan Urgent
Assistant United States Attorney
District of New Jersey
Office of the United States Attorney
970 Broad Street, Suite 700

20

                                                                Newark, NJ 07102
                                                               (973) 297-2079

OF COUNSEL:

Elizabeth LeBlanc

U.S. Environmental Protection Agency, Region II

290 Broadway, 17th Floor

New York, NY 10007-1866

(212) 637-3106

<u>VERIFICATION OF COMPLAINT</u>

I, THOMAS BUDROE, am employed by the United States Environmental Protection Agency as an On-Scene Coordinator.  I have been responsible for the EPA's response actions at the Michelin Powerhouse Superfund Site and the Building 3 Vat Site which are the subjects of this Verified Complaint.  I have reviewed EPA's enforcement files and also have personal knowledge pertaining to certain of the facts addressed herein.  I swear under pains of perjury that the allegations set forth above are true and accurate to the best of my knowledge.

Date: _1/18/13_

THOMAS P. BUDROE
On-Scene Coordinator
Emergency and Remedial Response Division
U.S. Environmental Protection Agency
2890 Woodbridge Avenue
Edison, New Jersey 08837-3679
(732) 906-6191