**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br> v. <br><br> ALSOL CORPORATION, SB BUILDING ASSOCIATES, LIMITED PARTNERSHIP, SB BUILDING GP, L.L.C., UNITED STATES LAND RESOURCES, L.P., UNITED STATES REALTY RESOURCES, INC., LAWRENCE S. BERGER, and 3.60 ACRES OF LAND, More or Less, located at Block 58, Lot 1.01, at 2 through 130 Ford Avenue in Milltown, Middlesex County, New Jersey, <br><br> *Defendants*. | Civil No. 2:13-cv-00380 (KSH) (CLW) <br><br> **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on the government's notice of lodging an adjunct consent decree ("Consent Decree") and subsequent request that the Court enter the Consent Decree. While the Consent Decree is uncontested, the Court must review its terms and ensure that it is fair, reasonable, and consistent with the goals of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*

1

## I. Background

The Michelin Powerhouse Superfund Site ("Powerhouse Site") and the Michelin Building 3 Vat Site ("Building 3 Site") (collectively, "Sites") are located within Block 58, Lot 1.01, at 2 through 130 Ford Avenue in Milltown, Middlesex County, New Jersey. The Sites are part of the former Michelin Tire industrial facility. A removal site evaluation for the Powerhouse Site, completed by the United States Environmental Protection Agency ("EPA") on May 12, 2004, detected the presence of hazardous substances such as friable asbestos, arsenic, lead, and mercury. On November 12, 2010, the EPA completed a removal site evaluation for the Building 3 Site, in which friable asbestos was discovered. In undertaking response actions to address the release or threat of release of hazardous substances at the Sites, the EPA incurred certain response costs.

In January 2013, the government, acting at the request of the Administrator of the EPA, filed suit against defendants Alsol Corporation ("Alsol"); SB Building Associates, Limited Partnership ("SB-LP"); SB Building GP, L.L.C. ("SB-GP"); United States Land Resources, L.P. ("Land Resources"); United States Realty Resources, Inc. ("Realty Resources"); Lawrence S. Berger; and 3.60 Acres of Land, more or less, located at Block 58, Lot 1.01, at 2 through 130 Ford Avenue in Milltown, Middlesex County, New Jersey ("3.60 Acres"), seeking reimbursement of its response costs associated with the cleanup of the Sites.

In February 2013, Alsol and SB-LP, as well as a related business, SB Milltown Industrial Realty Holdings, LLC ("SB Milltown"), filed separate petitions for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey.  On May 15, 2017, the government, the non-debtor defendants in the present case as well as debtors Alsol, SB-LP, and SB Milltown, and certain creditors in the bankruptcy cases, entered into a multijurisdictional global settlement agreement (the "Settlement Agreement") that, among other things, established an agreed settlement for the government's claims, including the response cost recovery claims filed in this action, in the amount of $2,450,000.  The Settlement Agreement was incorporated in a proposed Chapter 11 plan of reorganization submitted to the bankruptcy court for confirmation once the Settlement Agreement was executed.  On November 6, 2020, the bankruptcy court entered an order confirming the plan, and the time for filing an appeal expired on November 20, 2020.

On September 15, 2017, the government lodged the present Consent Decree. (D.E. 123.)  Consistent with Department of Justice policy and pursuant to 28 C.F.R. § 50.7, the government published a notice of the lodged Consent Decree in the Federal Register, which invited comments from the public on the proposed judgment for a period of 30 days.  No comments were received.

Pursuant to the Consent Decree and Settlement Agreement, non-debtor defendants SB-GP, Land Resources, Realty Resources, and Berger stipulate to liability in the amount of $2,450,000, plus interest and certain costs.

3

## II. Standard of Review

CERCLA was passed in 1980 in order to "ensure the cleanup of the nation's hazardous waste sites." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 206 (3d Cir. 2003). It encourages the use of consent decrees as a means of advancing the public interest and minimizing litigation. *See* 42 U.S.C. § 9622(a). The standard of review applied by the district court in reviewing CERCLA consent decrees is deferential. If a consent decree is "fair, reasonable, and consistent with CERCLA's goals," it should be approved. *Tutu*, 326 F.3d at 207 (citing *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000)).

## III. Discussion

### A. Fairness

In examining the fairness of a consent decree, a court must consider both procedural and substantive considerations. *Id.* Courts should give deference to the EPA's expertise in crafting consent decrees, and to CERCLA's policy of encouraging settlements. *Se. Pa. Transp. Auth.*, 235 F.3d at 822.

#### 1. Procedural Fairness

"Procedural fairness requires that settlement negotiations take place at arm's length." *United States v. Wyeth Holdings LLC*, 2015 WL 7862724, at *2 (D.N.J. Dec. 3, 2015) (Thompson, J.) (citing *United States v. Cornell-Dubilier Elecs., Inc.*, 2014 WL 4978635, at *4 (D.N.J. Oct. 3, 2014)). "When evaluating procedural fairness, a court must examine the negotiation process leading to the consent decree and gauge its

4

'candor, openness and bargaining balance.'" *Id.* (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)).

Here, the Settlement Agreement that culminated in the Consent Decree was the product of arm's length, counseled negotiations that date back to January 2016. Those negotiations included the defendants in this case as well as major creditors in the individual bankruptcy proceedings, and resulted in the Settlement Agreement that all parties accepted. Therefore, the Court finds the Consent Decree to be procedurally fair.

### 2. Substantive Fairness

"Substantive fairness requires that the terms of the consent decree [be] based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has caused.'" *Tutu*, 326 F.3d at 207 (quoting *Se. Pa. Transp. Auth.*, 235 F.3d at 823). "As long as the measure of comparative fault on which the settlement terms are based is not 'arbitrary, capricious, and devoid of a rational basis,' the district court should uphold it." *Se. Pa. Transp. Auth.*, 235 F.3d at 824 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 87).

As the owner of the Sites, debtor Alsol is liable for EPA's cleanup costs under CERCLA Section 107(a). Under the terms of the Settlement Agreement, debtors SB-LP and SB Milltown share a responsibility with Alsol to satisfy the government's $2,450,000 claim in the bankruptcy cases. The Consent Decree resolves the government's alter ego claims against non-debtor defendants SB-GP, Land Resources,

5

Realty Resources, and Berger, making those parties payors of last resort in the event the government's claim is not satisfied by the secured property liens. Further, as stated above, the Settlement Agreement and Consent Decree were negotiated with the involvement of the debtor defendants, the non-debtor defendants, and the major creditors in the three bankruptcy proceedings. The Court is satisfied that the Consent Decree is sufficient to meet the standards of substantive justice.

### B. Reasonableness

"To determine if a proposed consent decree is reasonable, three factors are taken into account: (1) the technical effectiveness of the plan for environmental cleanup; (2) the amount of monetary compensation to the public; (3) and the overall fairness of the decree in light of the relative strengths of the parties and foreseeable risk of loss." *United States v. Nat'l R.R. Passenger Corp.*, 1999 WL 199659, at *14 (E.D. Pa. Apr. 6, 1999) (citing *Cannons Eng'g Corp.*, 899 F.2d at 90) *aff'd sub nom. United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817 (3d Cir. 2000). However "[i]f the decree provides that the government may recoup its costs, 'reasonableness' requires that the settlement adequately reimburse the public fisc for incurred costs attributable to the [potentially responsible parties]." *United States v. Atlas Minerals and Chems., Inc.*, 851 F. Supp. 639, 652 (E.D. Pa. 1994) (citing *Cannons Eng'g Corp.*, 899 F.2d at 89-90). "A settlement may be deemed unreasonable . . . if it is based on a clear error of judgment, a serious mathematical error, or other indicia that the parties did not intelligently enter into the compromise." *United States v. Acton Corp.*, 733 F. Supp. 869, 872 (D.N.J.

6

1990) (Brown, J.) (citing *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 686 (D.N.J. 1989)).

Under the Settlement Agreement and Consent Decree, the government is entitled to recover $2,450,000 of the $3,230,464 it spent on CERCLA removal costs associated with the Sites. The government's claim is secured by a lien on the real property encompassing the Sites as well as six other liens on parcels in Milltown, NJ. The government's security, in the form of eight real property liens, increases the likelihood of full recoupment. The Consent Decree also resolves the issue of lien priority in a manner that is acceptable to the various creditors, thereby providing certainty and avoiding additional litigation on the competing lien interests. Further, while the government's claim is approximately $780,000 less than the funds it expended, the Consent Decree reflects an acknowledgement of the risks associated with litigating the alter ego liability claims asserted in the complaint against SB-LP, Land Resources, and Berger.

The foregoing considerations make the Settlement Agreement and Consent Decree reasonable.

### C. Consistency with CERCLA's Goals

"CERCLA's real goal [is] the expeditious cleanup of hazardous waste sites." *Cornell-Dubilier Elecs.*, 2014 WL 4978635, at *12 (alteration in original) (quoting *United States v. DiBiase*, 45 F.3d 541, 546 (1st Cir. 1995)). However, CERCLA also has the "essential purpose of making those responsible for problems caused by the disposal

7

of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created." *FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 840 (3d Cir. 1994) (*en banc*) (quoting *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir. 1993)). The court should approve a consent decree consistent with these two goals. *See Cannons Eng'g Corp.*, 899 F.2d at 87.

Under CERCLA, the government is tasked with either obtaining the performance of remedial work by the responsible parties or seeking to ensure that the funds paid in response to a release or threatened release of hazardous substances are recovered through the liability scheme set forth in CERCLA, wherever possible. *See United States v. Ne. Pharm. and Chem. Co.*, 810 F.2d 726, 733 (8th Cir. 1986). As stated above, owners of contaminated property are among those parties charged with cleanup liability. *See* 42 U.S.C. § 9607(a) ("[T]he owner and operator of a . . . facility . . . shall be liable for (A) all costs of removal or remedial action incurred by the United States Government . . . ; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.")

Pursuant to the Consent Decree and in line with CERCLA's remedial and retroactive statutory scheme, non-debtor defendants SB-GP, Land Resources, Realty

8

Resources, and Berger are held accountable for ensuring that the government recoups its claim of $2,450,000 in response costs, which are a result of the EPA's efforts to promptly clean up the polluted Sites. The Consent Decree also serves CERCLA's goal of reducing litigation and transaction costs associated with response actions. *See Cannons Eng'g Corp.*, 899 F.2d at 87 ("The reality is that, all too often, litigation is a cost-ineffective alternative which can squander valuable resources, public as well as private.")

CERCLA empowers the EPA to pursue a variety of administrative and legal actions against hazardous contaminated site owners, including negotiating settlements. 42 U.S.C. § 9622. CERCLA, therefore, encourages settlements such as this one. Accordingly, the Court finds that the Consent Decree is consistent with CERCLA's goals.

## IV.   Conclusion

For the foregoing reasons, this Court finds that the Consent Decree is fair, reasonable, and consistent with CERCLA's goals. The government's request to enter the Consent Decree is granted. An appropriate Order will issue.

Date: March 19, 2020

      /s/ Katharine S. Hayden  
Katharine S. Hayden, U.S.D.J.